AMERICAN BOX MACH. CO. v. WILSON PAPER BOX MACH. CO. SAME v. ECONOMY METAL EDGE BOX CO. SAME v. PICTORIAL PRINTING CO. SAME v. DANHEISER. SAME v. ARNOLD.

(Circuit Court, N. D. Illinois. Jan. 27, 1896.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—NOVELTY—BOX MACHINE.

Letters patent No. 244,919, issued July 26, 1881, to Gordon Munro, for improvements in machines for covering pasteboard boxes with paper, in which the paper is taken from a roll or coil and passed over a roller resting in a paste box, and over or under other rollers to a box resting upon a form adapted to revolve, are not void for want of novelty. Box Co. v. Wilson, 50 Fed. 425, followed.

2. SAME—INFRINGEMENT.

Said patent is not infringed by devices which do not use the alternate deflections of the strip of paper by means of rollers between the paste box and the construction frame, and do not support the strip in mid-air, after the manner of the patented machine.

In Equity.

Suits by the American Box Machine Company against the Wilson Paper Box Machinery Company and others to restrain the alleged infringement of letters patent.

Wetmore & Jenner and R. H. Parkinson, for complainant.
Charles C. Buckley, for defendants.

GROSSCUP, District Judge. In this case the several defendants are charged with the infringement of letters patent 244,919, dated July 26, 1881, to Gordon Munro, for a box machine. "The scope of the invention," says Judge Blodgett, in his opinion (Box Co. v. Wilson, 50 Fed. 425), "covered by the patent, is stated by the patentee, in his specifications, as follows: 'My invention relates to improvements in machines for covering pasteboard boxes with paper, in which the paper is taken from a roll or coil, and passed over a roller resting in a paste box, and over or under other rollers, to a box resting upon a form adapted to revolve; and the objects of my improvements are to produce an inexpensive machine, in which the amount of paste received on the paper can be regulated, the paste or glue retained in a warm or hot state, and the delivery of the paper from the coil is adjustably accomplished.' Dispensing with the letters of reference, the machine described in and covered by the patent consists of a frame upon which is mounted a spindle for carrying a roll of paper; a paste box, through which the ribbon of paper, as it is unwound from the roll, passes; and a guide roll for guiding the paper, as it is delivered from the paste box, to the box which is to be covered."

One of the chief functions of the invention is stated by the patentee as follows:

By bending the strip of paper, D, first in one direction over the roll, L, and then in the opposite direction, under the roller, M, and again over the roller, N, the damp paper becomes 'tempered,' and can be laid very smoothly upon

the box under construction. And, by keeping the paste heated, it will become partly 'set' upon that side of the paper to which it is applied, and will not affect the face of the paper, and the strawboard of the box will absorb the moisture."

Claim 2, under which the infringement by defendants' devices is averred to fall, is as follows:

"The combination of the table-top, A, paper roll supporting frame, paste box, F, and adjustable scraper, k, with guide rolls and block, e, adapted to revolve, substantially as and for the purposes described."

I think I am precluded, by the decision of Judge Blodgett, from inquiring now into the validity of complainant's patent. Some new testimony, it is true, has been introduced, tending to show that some of the prior devices under review by Judge Blodgett, but regarded by him as impracticable, were in fact practicable and operative. But, in the conclusion to which I have come upon another branch of this case, I prefer not to pass upon the effect or conclusiveness of this new evidence.

If, in fact, the complainant's patent made practicable that which was previously impracticable, it was by virtue of that feature which kept the strip of paper, after passing through the paste box, away from the table, and in the atmosphere, until the paper wet with the paste was just sufficiently tempered to be laid smoothly upon the box under construction. Possibly, the deflections of the paper, under tension, first one way, and then another, over the several rollers of the complainant's machine, had much to do with this tempering. This feature of the complainant's device is in the nature of a discovery, and of the adaptation of mechanical means to make the discovery operative. The discovery that paper dampened with paste ought first to remain a certain space of time in the atmosphere, before being laid upon the box, is doubtless valuable, but is not patentable. Only the mechanical means used to adapt this discovery to actual use can be the subject of a patent. Neither can complainant's claim be so extended as to cover all kinds of mechanical means which have the effect of keeping the paper free from the table from the time it leaves the paste box until it reaches the box under construction. Those means pointed out in the complainant's patent are his property, and those only. Any one else is entitled to the benefit of the discovery, provided he does not use the complainant's means, or their equivalent. I cannot find that either of the devices under consideration employ the specific means used by the complainant to attain this end. They do not use the alternate deflections of the strip, obtained by the interposition of rollers or rods at intervals between the paste box and the construction frame; and they do not support the strip in mid-air, after the manner of complainant's device. Indeed, unless the complainant is entitled to every mechanical means that will make his discovery practicable,—which, in effect, would be a patent upon his discovery,—the defendants' devices are free from the charge of being an infringement. The bills will therefore be dismissed.